## ROBSON v GENERAL MOTORS CORPORATION

Docket No. 73056. Submitted May 17, 1984, at Detroit.—Decided September 18, 1984. Leave to appeal applied for.

Plaintiff, William J. Robson, brought an action in the Wayne Circuit Court against defendant, General Motors Corporation, alleging that he was discriminated against in his employment with the defendant as a result of a physical handicap. Plaintiff contracted polio as a child and, as a result, was forced to undergo two operations to fuse vertebrae in his back. Plaintiff was later employed by the defendant as a test driver from 1965 to 1978 and performed satisfactorily in that capacity without a change in his back condition. Nevertheless, in December, 1978, after a routine physical examination, plaintiff was removed from test driving because of his back condition. He continued to work for defendant in other capacities until February 12, 1982, when he was laid off. Plaintiff filed his complaint on June 14, 1982. Defendant moved for an accelerated judgment which the trial court, Michael L. Stacey, J., granted, holding that plaintiff's claim was barred by the applicable statute of limitations. Plaintiff appeals. *Held:*

1. Where, as here, a jury trial has been demanded on or before the day of the hearing on a motion for accelerated judgment pursuant to GCR 1963, 116.1(5), resolution of any disputed questions of fact material to the motion must be postponed until the trial on the merits. However, because the circuit court's decision was correct even if plaintiff's factual claims are assumed to be true, postponement of resolution of the motion until the trial on the merits was unnecessary here.

2. The applicable limitations period for this action is three years. Plaintiff's removal from test driving occurred before June 14, 1979, and the limitations period had run before plaintiff filed his complaint on June 14, 1982.

3. The circuit court did not err in granting the accelerated

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment § 11.

[2] 20 Am Jur 2d, Courts § 183 *et seq.*

[3] 15 Am Jur 2d, Civil Rights §§ 248.5, 307-309.

Construction and effect of state legislation forbidding job discrimination on account of physical handicap. 90 ALR3d 393.

judgment. The limitations period began to run with the alleged discriminatory act of removing plaintiff from test driving, not with the defendant's subsequent failure to change its mind. Requests for relief from a prior discriminatory act will not start the limitations period running anew.

Affirmed.

1. JUDGMENTS — ACCELERATED JUDGMENT — JURY TRIALS — COURT RULES.

Resolution of any disputed questions of fact material to a motion for accelerated judgment based upon the ground that the claim is barred because of release, payment, prior judgment, statute of limitations, statute of frauds, infancy, or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action must be postponed until the trial on the merits where a jury trial has been demanded as of right on or before the day of the hearing on the motion for accelerated judgment (GCR 1963, 116.1[5]).

2. CIVIL RIGHTS — FEDERAL PRECEDENTS.

Michigan courts regard federal precedents on questions analogous to those presented under Michigan's civil rights statutes as highly persuasive, although not binding.

3. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — LIMITATION OF ACTIONS.

A limitations period begins to run in regard to a violation of rights to employment under the Michigan Handicappers' Civil Rights Act at the time of the discriminatory act, not with the employer's subsequent failure to change its mind in regard to such act; request for relief from a prior discriminatory act will not start the limitations period running anew (MCL 37.1101 *et seq.*, 600.5805[8]; MSA 3.550[101] *et seq.*; 27A.5805[8]).

*Stark & Gordon* (by *Deborah L. Gordon* and *Edward M. Oberski)*, for plaintiff.

*Mark R. Flora,* and *Clark, Hardy, Lewis, Pollard & Page, P.C.* (by *Terence V. Page* and *Neil H. Goodman),* of counsel, for defendant on appeal.

Before: M. J. KELLY, P.J., and BRONSON and
C. W. SIMON,* JJ.

PER CURIAM. Plaintiff brought this action pursu-
ant to the Michigan Handicappers' Civil Rights
Act, MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.,*
to recover damages and obtain injunctive relief for
alleged discrimination in employment. The circuit
judge granted an accelerated judgment for defen-
dant pursuant to GCR 1963, 116.1(5), holding that
plaintiff's claim was barred by the applicable stat-
ute of limitations, MCL 600.5805(8); MSA
27A.5805(8), and plaintiff appeals as of right.

Plaintiff correctly points out that where, as here,
a jury trial has been demanded as of right on or
before the day of the hearing on a motion for
accelerated judgment pursuant to GCR 1963,
116.1(5), resolution of any disputed questions of
fact material to the motion must be postponed
until the trial on the merits. However, because the
circuit court's decision was correct even if plain-
tiff's factual claims are assumed to be true, post-
ponement of resolution of the motion until the
trial on the merits was unnecessary here.

As a child, plaintiff contracted polio and, as a
result, was forced to undergo two operations to
fuse vertebrae in his back. Plaintiff was employed
by defendant as a test driver from 1965 to 1978
and performed satisfactorily in that capacity.
Plaintiff's back condition remained unchanged dur-
ing the course of his employment as a test driver.
Nevertheless, in December, 1978, after a routine
physical examination, plaintiff was removed from
test driving because of his back condition. Plaintiff
continued to work for defendant in other capaci-
ties until February 12, 1982, when he was laid off.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff's complaint was filed on June 14, 1982. A three-year limitations period is established by MCL 600.5805(8); MSA 27A.5805(8). The crucial date is therefore June 14, 1979, and plaintiff's removal from test driving occurred before that date. Plaintiff, however, contends that his claim is not barred, either because defendant's conduct amounted to a continuing violation of the Handicappers' Civil Rights Act from December, 1978, until February 12, 1982, or because of other violations of the act by defendant within the limitations period.

Michigan courts regard federal precedents on questions analogous to those presented under Michigan's civil rights statutes as highly persuasive, although not binding. *Northville Public Schools v Civil Rights Comm,* 118 Mich App 573, 576; 325 NW2d 497 (1982). In *United Air Lines, Inc v Evans,* 431 US 553; 97 S Ct 1885; 52 L Ed 2d 571 (1977), plaintiff, an airline flight attendant, had been forced to resign when she married. She was subsequently rehired, but she was treated as a new employee for seniority purposes. Plaintiff's forced resignation did not take place within the limitations period, but plaintiff argued that the continuing effect of the forced resignation on her seniority established a continuing violation extending within the limitations period. The Court rejected plaintiff's argument, holding that what was necessary was a violation within the limitations period, not merely the continuing effects of past violations.

In *Delaware State College v Ricks,* 449 US 250; 101 S Ct 498; 66 L Ed 2d 431 (1980), plaintiff, a college professor, was denied academic tenure but was not discharged immediately. Instead, he was offered, and he accepted, a one-year terminal con-

tract. Plaintiff's employment terminated with the expiration of that contract. Explaining that the termination of employment was merely an effect of the allegedly discriminatory denial of tenure, the Court held that the limitations period began to run with the denial of tenure rather than with the termination of employment.

In *Chardon v Fernandez,* 454 US 6; 102 S Ct 28; 70 L Ed 2d 6 (1981), the Court held that the limitations period began to run when the plaintiffs were notified that their employment would be terminated, not when termination actually occurred. The Court explained that *Ricks* showed that the proper focus was on the time of the discriminatory act, not the time at which the consequences of the act became painful.

*Evans, Ricks* and *Chardon* persuade us that the circuit court here did not err by granting an accelerated judgment for defendant. Plaintiff's complaint contains the following allegations:

"15. From the time that plaintiff was removed from his position as a test driver until the date of his termination, he was continually subjected to a policy of handicap discrimination, including but not limited to, changes in shift assignment, loss of bonus, denial of promotions, and other changes in the terms, conditions and benefits of his employment which would not have occurred had he not been subjected to defendant's continuing policy of discrimination against the handicapped.

"16. On or around February 12, 1982, plaintiff's employment with defendant was terminated.

"17. Said termination would not have occurred had plaintiff not been discriminated against on the basis of his handicap."

In his brief on appeal, plaintiff lists the following events:

"1. March, 1980: Dr. Tripp reviews the letter from Dr. William S. Smith who has recommended that appellant be allowed to go back to test driving. Dr. Tripp evaluates appellant's condition in light of this new information, and issues a written report. On March 19, 1980, Dr. Tripp issues a new 'Classifications and Recommendations' form based upon the Dr. Smith letter.

"2. April 17, 1980: Dr. Tripp issues another 'Classifications and Recommendations' form which changes appellant's restrictions, but still prohibits him from road test driving.

"3. May 16, 1980: Appellant is transferred out of the test driving department into the security department due to his restrictions. He makes a request to be placed in the 'dynamometer group', or the 'road maintenance department' but is denied because of his weight restrictions.

"4. August of 1981: Appellant is given another annual or 'periodic' medical examination by a new doctor. The purpose of this examination is to determine whether he should be placed under or continue with restrictions. The new doctor issues a new report, first indicating that appellant is 'unrestricted', but later changes this to prohibit him from test driving.

"5. February 12, 1982: Appellant is laid off due to his restrictions."

The changes in terms, conditions and benefits of plaintiff's employment and plaintiff's eventual layoff, on the undisputed facts presented here, were analogous to the seniority at issue in *Evans*. The changes and eventual layoff were mere consequences or effects of the 1978 decision to remove plaintiff from test driving. Defendant's failures to reinstate plaintiff as a test driver after various reviews of plaintiff's condition were analogous to the terminations at issue in *Ricks* and *Chardon*. *Ricks* and *Chardon* show that the limitations period begins to run with the discriminatory act, not with the employer's subsequent failure to change

its mind. Requests for relief from a prior discriminatory act will not start the limitations period running anew. *Equal Employment Opportunity Comm v McCall Printing Corp*, 633 F2d 1232, 1237 (CA 6, 1980). A contrary rule would permit a plaintiff to circumvent the statute of limitations and revive a cause of action by merely requesting the employer to undo its past acts.

Affirmed.